Cheryl **BENVENUTO**, Plaintiff,

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY,**
Defendant.

**Civ. A. No. 84–3601.**

United States District Court,
D. New Jersey.

Feb. 11, 1986.

Richard Stelnik, Paramus, N.J., for plaintiff.

Richard M. Eittreim, and Beverly R. Tanenhaus, McCarter & English, Newark, N.J., for defendant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

This is an action by the plaintiff Cheryl Benvenuto against defendant Connecticut General Life Insurance Company ("Connecticut General") seeking compensatory and punitive damages for breach of contract, fraud, bad faith and intentional infliction of emotional distress. By stipulation and order filed February 14, 1985, the fourth count of the complaint and other references to the antitrust laws were dismissed. The pretrial order was filed October 10, 1985. The parties cross-move for partial summary judgment with respect to whether plaintiff's common law causes of action are preempted by the Employee Retirement Income Security Act of 1974, 88 Stat. 829, codified as amended at 29 U.S.C. § 1001 et seq. ("ERISA").

At the outset, plaintiff argues that defendant has waived or is estopped from asserting the defense of preemption. Plaintiff contends that the issue of choice of law has been extensively briefed and decided by this Court and that defendant's failure to mention the possibility of preemption of plaintiff's claims by ERISA until the day of the pretrial conference precludes it from doing so now.

As stated previously, on October 10, 1985 Magistrate Perretti signed a final pretrial stipulation and order. At page 23 of that order, in Item 6 under the heading "Defendant's Legal Issues," the issue of whether ERISA's preemption claims for damages other than for contract benefits is explicitly raised. Moreover, page 25 of that order contains a list of motions pending or contemplated on behalf of Connecticut General. The first item listed is: "Motion to dismiss all claims for punitive damages other than contract benefits as preempted by [ERISA]."

Under Federal Rule of Civil Procedure 16, the pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." When entered, the order limits the issues for trial and takes the place of the pleadings covered by the pretrial order. See Basista v. Weir, 340 F.2d 74, 85 (3d Cir.1965); Hoagburg v. Harrah's Marina Hotel, 585 F.Supp. 1167, 1175 (D.N.J.1984). Indeed, the pretrial order operates to preserve a claim or defense that would normally be waived by proceeding to trial. See United States v. Hougham, 364 U.S. 310, 316, 81 S.Ct. 13, 17, 5 L.Ed.2d 8 (1960); reh'g denied, 364 U.S. 938, 81 S.Ct. 376, 5 L.Ed.2d 372 (1961); Jenkins v. Carruth, 583 F.Supp. 613, 615 (E.D.Tenn.), aff'd, 734 F.2d 14 (6th Cir.1984); United States v. Texas, 523 F.Supp. 703, 720 (E.D.Tex.1981). By virtue of the pretrial order, plaintiff had notice that defendant was preserving the right to move for summary judgment on the ERISA preemption issue. Therefore, defendant is not now precluded from raising this defense.

I now turn to the parties' cross-motions for summary judgment. At the outset, I note that rule 56 of the Federal Rules of

Civil Procedure provides that summary judgment is not to be granted unless, after all reasonable inferences are drawn in favor of the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Sames v. Gable*, 732 F.2d 49, 50 (3d Cir.1984). The facts are not in dispute for the purposes of this motion. Rather, the parties each contend they are entitled to judgment on the legal issue.

Plaintiff was employed as a flight attendant with Braniff Airways in January of 1982. She was at that time an eligible employee under a group medical insurance policy issued by defendant Connecticut General to Braniff Airways, Inc. Braniff was based in Dallas, Texas. Although plaintiff was then domiciled in New Jersey, she spent two and a half to three weeks per month in Dallas.

On January 11, 1982, plaintiff began allergy treatments with Dr. William Rea as an outpatient at Carrollton Community Hospital ("Carrollton") in Dallas. Plaintiff commenced treatment as an inpatient at Carrollton in February 1982 and was discharged in March 1982 after thirty-nine days of treatment. Plaintiff submitted insurance claims resulting from this treatment totaling $18,235.10.

On July 13, 1983, Connecticut General paid plaintiff $15,567.17 under the policy. Plaintiff seeks $2,667.93, the balance of the medical costs. Moreover, plaintiff seeks compensatory and punitive damages in excess of $3 million for alleged negligent and intentional mishandling of her claim. The parties now cross-move for a ruling as to the preemptive effect of ERISA over plaintiff's common law claims of fraud, negligence, gross negligence and breach of contract.

ERISA, 29 U.S.C. § 1001, et seq., provides a comprehensive federal regulatory scheme designed to protect the interests of employees and beneficiaries in employee benefit plans. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983) (citing *Nachman Corporation v. Pension Benefit & Guaranty Corp.*, 446 U.S. 359, 361, 362, 100 S.Ct. 1723, 1726, 1727, 64 L.Ed.2d 354 (1980); *Alessi v. Raybestos Manhattan, Inc.*, 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981)). An "employee benefit plan," under the Act, includes both pension plans and employee welfare benefit plans. 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is defined as:

> any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employer organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment ..."

29 U.S.C. § 1002(1). Plans may self-insure or they may purchase insurance for their members. *Metropolitan Life Insurance Co. v. Massachusetts*, — U.S. —, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985). ERISA sets uniform standards on reporting disclosure and fiduciary responsibility for pension and welfare plans. *Shaw*, 103 S.Ct. 2896–97.

Before reaching the question of ERISA preemption, I must determine whether ERISA is applicable here. Plaintiff challenges its applicability contending that defendant has failed to establish that it is a fiduciary under an employment benefit plan. Indeed, plaintiff's argument calls into question whether an employee benefit plan even exists in this case.

ERISA mandates certain requirements of employee benefit plans. With regard to fiduciaries, section 1102(a) requires the following:

> (a)(1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have

authority to control and manage the operation and administration of the plan.

(2) For purposes of this subchapter, the term 'named fiduciary' means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

In terms of content, section 1102(b) requires that every plan shall:

(1) provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of this subject chapter,

(2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedure described in Section 1105(c)(1) of this title),

(3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan, and

(4) specify the basis on which payments are made to and from the plan.

Plaintiff argues that defendant has only submitted to this court a copy of an insurance policy, but no copy of an employee welfare benefit plan within the definition of section 1002(3) and meeting the requirements of section 1102. However, section 1102(a)(1) does not require a written instrument denominated as an "employee benefit plan." Rather, this subsection requires that a plan be established or maintained *pursuant to* a written instrument.

I read this language to mean that a written instrument must exist that contains the provisions of a plan. However, the plan, itself, need not be the same as this instrument. Indeed, *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982), teaches us that the essentials of a plan may be adopted from sources outside the plan. Here, the purchase of insurance alone does not constitute a plan but does provide evidence of the establishment of a plan.

Therefore, I find that an employee welfare benefit which provides for health insurance benefits under a group health insurance policy underwritten by Connecticut General Life Insurance Company does exist.

■ I also reject plaintiff's argument that the lack of a named fiduciary in the Connecticut General Insurance policy defeats the application of ERISA to this case. It is true that the Connecticut General policy proffered by the defendant does not designate a fiduciary. However, a closer inspection of the language of section 1102(a) indicates that Congress did not require a fiduciary to be explicitly named in the instrument that embodies the employee benefit plan. Although section 1102(a)(1) requires that an employee benefit plan instrument "shall provide for one or more named fiduciaries," subsection (a)(2) of this section defines a "named fiduciary" as a fiduciary named in the plan *or who is identified as one by an employer or employee organization.* Further, section 1002(21)(A) states that:

Except as otherwise provided in subparagraph (B), *a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,* (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan or has any authority or responsibility to do so or, (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under Section 1105(c)(1)(B) of this title.

(Emphasis supplied.)

Here plaintiff concedes that defendant was in a position to grant or deny claims. Section 1002 is clear in stating that an entity is a fiduciary to the extent that it does exercise such authority. *See also Schulist v. Blue Cross of Iowa*, 553 F.Supp. 248 (N.D.Ill.1982), *aff'd*, 717 F.2d

1127 and 1131 (7th Cir.1983). The record indicates that Connecticut General did determine whether to pay plaintiff's claim and in fact issued the check that covered some of plaintiff's claims. Application of the facts in the record to section 1002(21) indicates that defendant was a fiduciary with respect to the administration of Braniff's employee welfare benefit plan.

■ Turning now to the question of preemption, ERISA contains provisions pertaining to preemption of state law. First, the statute provides that it "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by the Act. 29 U.S.C. § 1144(a). However, ERISA saves from preemption "any law of any state which regulates insurance banking or securities." 29 U.S.C. § 1144(b)(2)(A). ERISA contains a further exception to this exemption not pertinent here, for self-funded claims. Section 1144(b)(2)(B) bars the states from deeming self-funded plans as insured plans which would be subject to State laws regulating insurance companies and contracts. Finally, section 1144(d) provides that "[n]othing in this subchapter shall be construed to alter, amend, invalidate, impair or supersede any law of the United States ..."

Defendant argues that plaintiff's state law claims "relate to" an ERISA plan and are thus preempted under the broad preemption provision of section 1144(a). In *Shaw v. Delta Airlines, Inc.*, cited *supra*, the Court interpreted the section broadly giving effect to its plain language and held that the New York Human Rights Law and its Disability Benefits Law related to "pension plans governed by ERISA." According to the Court, "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." 463 U.S. at 96–97, 103 S.Ct. at 2900. The Court expressly rejected any interpretation that would limit the preemptive scope of this section only to state laws specifically designed to affect employee benefit plans or to those dealing with subject matter cover-

ed by ERISA, i.e., reporting, disclosing and fiduciary responsibility. *Id.* at 98, 103 S.Ct. at 2900. As the Court had stated previously, "even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern." *Alessi*, 451 U.S. at 525, 101 S.Ct. at 1907. However, in a footnote the *Shaw* court recognized that some state action may affect the administration of any employee benefit plan in "too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." 463 U.S. at 100, n. 21, 103 S.Ct. at 2901 n. 21 (*citing for comparison, American Telephone & Telegraph Company v. Merry*, 592 F.2d 118, 121 (2d Cir.1979) (state garnishment of a spouse's income is not preempted)).

More recently in *Metropolitan Life Insurance Co. v. Massachusetts, supra*, the Supreme Court held that a state law regulating the content of group health insurance benefits "related to" a benefit plan so as to be covered by ERISA's broad preemptive provision, § 1144(a). In so doing, the *Metropolitan Court* found that ERISA "was intended to displace all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements." *Id.* 105 S.Ct. at 2389, (citing *Shaw v. Delta Airlines*, 463 U.S. at 98–99, 103 S.Ct. at 2900.) However, the Court found that the Massachusetts law was "saved" by § 1144(b)(2)(A) as a "law of any state which regulates insurance, banking or securities," 105 S.Ct. at 2389–93, and, therefore was not preempted by ERISA.

Defendant relies on these cases as well as two Third Circuit cases in arguing that plaintiff's state law causes of action "relate to" any employee benefit plan. In *Lucash v. Strick Corp.*, 602 F.Supp. 430 (E.D.Pa. 1984), *aff'd mem.* 760 F.2d 259 (3d Cir. 1985), the district court dismissed plaintiff's state law claims of knowing, intentional or reckless breach of duty of care, fiduciary duty and/or contractual obligation on the ground they were preempted by ERISA. The Third Circuit affirmed the

district court's finding that plaintiff's state law claims were preempted because §§ 1132, 1109 and 1140, which detail liability and remedies for breach of fiduciary duty, specifically proscribed and provided remedies for the same type of wrong addressed by the state law claims. 602 F.Supp. at 436.

Defendant also cites *Kelly v. International Business Machines Corp.*, 573 F.Supp. 366 (E.D.Pa.1983), *aff'd mem.*, 746 F.2d 1467 (3d Cir.1984), in which the Court found that ERISA preempted a state law claim for wrongful discharge. The Third Circuit affirmed the district court's finding that § 1140 of ERISA specifically prohibited the discharge of any employee for the purpose of interfering with any right the employee may become entitled to under the plan. Because ERISA addressed precisely the same wrong grounding the state law claim, the court found the claim to be preempted. However, in a ruling not discussed by defendant Connecticut General in its brief, the Court in *Kelly* found that another state law claim, one for intentional infliction of emotional distress, *was not preempted* by ERISA. The court found that ERISA afforded no remedy for this type of harm and that state law on this tort fit the exception outlined in the *Shaw* footnote for state action affecting employee benefit plans in "too tenuous, remote or peripheral a manner" to "relate to" a plan. In so holding, the *Kelly* court said:

Admittedly, the occurrence of the complained of conduct, forming the basis for the state tort action, in the context of an application for ERISA benefits intimates a marginal effect on the standards governing the administration of ERISA claims. Nonetheless, in view of Pennsylvanias restriction on recovery for emotional distress to situations involving intentionally 'outrageous conduct,' and considering the separate concerns of the federal scheme and the state tort law, this effect is too insubstantial to warrant preemption of the State law. The state's legitimate and important interests in protecting its citizens cannot be preempted on such a slim reed. *Cf. Farmer v. Carpenters*, 430 U.S. 290, 304–306, 97

S.Ct. 1056, 1065–1066, 51 L.Ed.2d 338 (1977) (§ 301 of the Labor Management Relations Act, 29 U.S.C. § 185, does not preempt claims of intentional infliction of emotional distress).

*See* 573 F.Supp. at 371.

An analysis of the claims pressed by plaintiff show that they are predicated on allegations of improper handling of and refusal to pay plaintiff's expenses relating to her allergy treatments. As embodied by the pretrial order, plaintiff asserts common law claims of breach of contract, fraud and negligent and grossly negligent handling of plaintiff's insurance claim.

These claims are more analogous to those of breach of fiduciary duty for which ERISA prescribes a remedy and thus hold they are preempted by ERISA under Section 1144(a). I am constrained from holding otherwise given the broadness of ERISA and the express congressional intent that ERISA occupy the field of regulating employee benefit plans. ERISA provides for actions by claimants such as the plaintiff here in section 1132(a) which states:

(a) A civil action may be brought—(1) by a participant or beneficiary—(A) for the relief provided for in Subsection (c) of this section, or (B) to recover benefits due to him under the terms of this plan, to enforce his rights under the terms of the plan, or to clarify its rights to future benefits under the terms of the plan ... (3) by participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan or, (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Section 1109 details the extent of a fiduciary's liability for breach of duty:

(a) any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligation, or duties imposed on fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to

such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary ...

In holding that the claims are preempted, I am not unmindful that section 1109 provides only for relief to the plan, not to the beneficiary whose rights may have been violated. The Supreme Court teaches this in *Massachusetts Mutual Life Insurance Company v. Russell,* — U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). However, as the concurring opinion points out, the *Russell* decision leaves open whether other provisions of ERISA provide other remedies directly to the beneficiary. *See* 105 S.Ct. at 3095-3097 (Justice Brennan concurring).

Plaintiff's state law causes of action are not saved from preemption under the "savings clause" found in § 1144(b)(2)(A) which exempts from preemption "any law of any state which *regulates* insurance." A plain meaning, common sense analysis of the word "regulate" precludes the clause's application here.

Moreover, I rely on the definition of and case law interpreting "business of insurance" as used in the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.,* to find that these state law causes of action are not exempted. As the Supreme Court stated in *Metropolitan,*

Cases interpreting the scope of the McCarran-Ferguson Act have identified three criteria relevant to determining whether a particular practice falls within the Act's reference to the "business of insurance": *"first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Union Labor Life Insurance Company v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982) (emphasis in the original). (Other citations omitted.)

Utilizing these criteria, it is clear that state law actions in breach of contract, fraud and negligent mishandling of a claim do not operate to regulate insurance.

Plaintiff's argument that the *Metropolitan* case did not limit state action exempted under the savings clause to laws which regulate the *content* of insurance contracts is a valid one. However, even those actions which do not purport to regulate content must bear directly on insurance. These state causes of action do not. Therefore, plaintiff's argument is unavailing in this context. Plaintiff's other arguments based on *Eversole v. Metropolitan Life Insurance Co.,* 500 F.Supp. 1162 (C.D.Cal. 1980), *McLaughlin v. Connecticut General Life Insurance Co.,* 565 F.Supp. 434, (N.D.Cal.1983), and *Presti v. Connecticut General Life Insurance Co.,* 605 F.Supp. 163 (N.D.Cal.1985), must be summarily dismissed because they are not the law of this circuit as enunciated in *Lucash* and *Kelly.*

Accordingly, because plaintiff's claims arise from the administration of a valid employee benefit plan administered by Connecticut General as it is fiduciary and because plaintiff's claims relate to an employee benefit plan but not to the regulation of insurance, plaintiff's common law state causes of action are preempted by ERISA.