**Charles W. REDMAN, III, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, the One Bancorp, and Fleet Bank of Maine, Defendants.**

**Civ. No. 91–279–P–C.**

United States District Court,
D. Maine.

July 14, 1992.

---

Rubin G. Segal, Portland, Me., for plaintiff.

Michael K. Martin, Petruccelli, Cox & Martin, James B. Barns, Drummond & Drummond, Portland, Me., for defendants.

## ORDER GRANTING DEFENDANT FLEET BANK OF MAINE'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

This case arises from the claim for damages of Charles W. Redman, III that, as a former employee of Maine Savings Bank ("MSB"), he is entitled to severance pay under the MSB Financial Security Severance Plan ("Severance Plan" or "Plan").

The Court now has before it Defendant Fleet Bank of Maine's ("Fleet Bank") Motion for Summary Judgment, filed on June 22, 1992.[1] Plaintiff has not responded to the motion. Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ In general, under Local Rule 19(c), a party who fails to file a timely objection to a motion is deemed to have waived objection. It is well-established law

---

1. Defendant The One Bancorp ("One Bancorp") also filed a motion for summary judgment on March 5, 1992. On June 10, 1992, however, this case was stayed as to Defendant One Bancorp due to an involuntary bankruptcy petition filed against One Bancorp in the Bankruptcy Court for the District of Connecticut. As a result, on July 1, 1992, the Court terminated its consideration of this Defendant's pending summary judgment motion. *See* Docket No. 41.

in this district, however, that Federal Rule of Civil Procedure 56 requires the Court to examine the merits of a motion for summary judgement even though a nonmoving party fails to object as required by Local Rule 19(c). *See Gagne v. Carl Bauer Schraubenfabrick GmbH*, 595 F.Supp. 1081, 1084 (D.Me.1984). Although a total waiver of objection to a motion for summary judgment is not imposed under Local Rule 19(c), a party who fails to object in a timely fashion is deemed to have consented to the moving party's statement of facts to the extent that the statement is supported by appropriate record citations. *See McDermott v. Lehman*, 594 F.Supp. 1315, 1321 (D.Me.1984).

In this case, the material facts set forth and supported by Defendant, and deemed consented to by Plaintiff, are as follows.

## I. *Facts*

Plaintiff had been an employee of MSB since March, 1978, and, as of February 1, 1991, he was employed as Vice President of Program Development and Sales. Effective March 15, 1990, MSB and One Bancorp implemented the Severance Plan to provide certain severance benefits to eligible employees pursuant to its terms and conditions.[2] The Plan constitutes an employee welfare benefit plan within the meaning of Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and Department of Labor Regulation Section 2510.3–1(a)(2) and (3). It defines "Eligible Employee" as "[a]ny officer of the Employer and any common law employee (whether Full-time or Part-time) of the Employer ..." Affidavit of Vincent E. Furey, Jr. in Support of Defendant The One Bancorp's Motion for Summary Judgment ("Furey Affidavit"), Exhibit A (court-designated), section 4(e), at 2. The Plan defines "Employer" as "[t]he One Bancorp and the [MSB], each with respect to its own employees, or jointly with respect to joint employees." *Id.*, section 4(g), at 2.

**2.** MSB was a subsidiary of Defendant One Bancorp.

**3.** The record contains no evidence that FDIC and Fleet Bank entered into any such agree-

On February 1, 1991, MSB was declared insolvent and was closed by the Superintendent of Banking of the State of Maine, and the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver. On the same date, Fleet Bank entered into a Purchase and Assumption Agreement ("Agreement") with the FDIC. *See* Affidavit [of Peter Fitzpatrick] in Support of Motion to Dismiss, ¶ 3. Pursuant to that Agreement, Fleet Bank did not assume any liability for former MSB employees under employee benefits plan of MSB:

> 2.4 *Employee Benefit Plans.* The Assuming Bank shall have no liabilities, obligations or responsibilities under the Failed Bank's employee benefit plans, including without limitation medical, insurance, vacation, pension, profit sharing or stock purchase plans, if any, unless the Receiver and the assuming Bank agree otherwise subsequent to the date of this Agreement.[3]

*Id.*, Exhibit 1, Article II, Section 2.4, at 4.

On February 8, 1991, Plaintiff was terminated from his employment due to a job elimination. One week later, he filed a proof of claim for $31,148.00 with the FDIC. On July 16, 1991, the FDIC notified Plaintiff that his claim was allowed in the amount of $4,792.00 (for vacation pay) but that the remainder of his claim in the amount of $26,356.00 (for severance pay) was disallowed. *See* Amended Complaint and Demand for Jury Trial ("Complaint"), Exhibit A.

On September 13, 1991, Plaintiff commenced a civil action to contest the FDIC's determination to disallow his claim for severance pay, pursuant to 12 U.S.C. section 1821(d)(6)(A). He amended his Complaint on January 2, 1992, alleging two counts; namely, breach of contract (Count I) and arbitrary and capricious conduct (Count II).

For the reasons that follow, the Court will grant Defendant Fleet Bank's motion for summary judgment.

ment after February 1, 1991, that would alter the terms of Article II, Section 2.4 of the Agreement. In addition, there is no evidence in the record that Fleet Bank ever entered into any contract with Plaintiff.

## II. *Discussion*

### A. *Count I*

■ Count I alleges a breach-of-contract claim against Defendants FDIC, One Bancorp, and Fleet Bank, based on the Plan. *See* Complaint, ¶¶ 15–20. This Court has already held that "the ERISA pre-emption clause explicitly pre-empts any common law breach-of-contract claim founded on a severance pay plan." *Muldoon v. FDIC*, 788 F.Supp. 608, 611 (D.Me.1992). *See also Bellino v. Schlumberger Technologies, Inc.*, 753 F.Supp. 391, 392 (D.Me.1990). Here, the Severance Plan is the same plan that was at issue in *Muldoon*. Similarly, the Court's review of the *Muldoon* complaint shows that its breach-of-contract claim is virtually the same claim raised by Plaintiff in this case.[4] Accordingly, based on the pre-emption clause of ERISA, the Court reaches the same conclusion; namely, that Plaintiff's breach-of-contract claim must be dismissed for lack of subject matter jurisdiction.

### B. *Count II*

■ The Court cannot dismiss Count II on the same basis that it has dismissed Count I of Plaintiff's Complaint. Unlike Count I, Count II does not allege a state law claim that would be explicitly pre-empted under ERISA's pre-emption clause. The Court agrees with Plaintiff that Count II can be construed "as a claim for enforcement of benefits against the Named Fiduciary or administrator of the Plan, under 29 U.S.C. sect. 1132(a)(1)(B) of ERISA, on the grounds that any denial of benefits to Redman was arbitrary and capricious ..." Memorandum in Support of Plaintiff's Objection to One Bancorp's Motion ("Plaintiff's Memorandum") at 3.

Plaintiff's allegations in Count II name only executive officers of MSB and One Bancorp, as well as refer to "the knowledge of the FDIC." *See* Complaint, ¶¶ 22, 23 (mislabeled as "22"). Plaintiff then alleges that "[s]uch disparate treatment con-stitutes arbitrary and capricious conduct on the part of *all* Defendants." *Id.*, ¶ 23 (emphasis added). Plaintiff, however, makes no allegations that Fleet Bank was involved in any of the acts of which Plaintiff complains in Count II.

Plaintiff asserts that Count II "can logically be construed as a claim for enforcement of benefits against the named beneficiary or administrator of the Plan, under 29 U.S.C. section 1132(a)(1)(B) of ERISA." Plaintiff's Memorandum at 4. Plaintiff properly notes that the Employer, *i.e.*, MSB and One Bancorp, is the named Fiduciary of the Plan. *Id.*[5]

As noted previously, subsequent to the implementation of the Plan on March 15, 1990, Fleet Bank entered into a Purchase and Assumption Agreement with the FDIC, upon MSB's insolvency and the FDIC's appointment as receiver on February 1, 1991. Pursuant to Article II, Section 2.4 of that Agreement, however, Fleet Bank did not assume any liability for former MSB employees under any employee benefits plan of MSB.

■ Although the Court could not locate any cases addressing the meaning of the term "employee benefit plan" in the purchase and assumption agreements that the FDIC entered into with successor depository institutions, it concludes that the Plan at issue here fits within the meaning of the "Employee Benefit Plans" delineated in the Agreement. The Court noted in *Muldoon* that, in the context of ERISA, the term "employee benefit plan" means an "employee welfare benefit plan." 788 F.Supp. at 610 (citing 29 U.S.C. § 1002(3) (1990)). *See also Massachusetts v. Morash*, 490 U.S. 107, 113, 109 S.Ct. 1668, 1671, 104 L.Ed.2d 98 (1989). Here, the Plan (the same plan at issue in *Muldoon*) is an employee welfare benefit plan under ERISA. *See Muldoon*, 788 F.Supp. at 610. *See also Wickman v. Northwestern National Insurance Co.*, 908 F.2d 1077, 1082 (1st Cir.

---

**4.** The only difference between Counts I in Plaintiff's and Muldoon's Complaints is that the latter contains one additional paragraph, ¶ 19, and one additional sentence in paragraph 18.

**5.** The Plan states that the Employer is "The One Bancorp and the Maine Savings Bank, each with respect to its own employees, or jointly with respect to joint employees." Furey Affidavit, Exhibit A, Section 4(g), at 2. It further states that "The Employer is the Named Fiduciary of the Plan." *Id.*, Section 10, at 6.

**24**

1990) ("[A] welfare benefit plan under ERISA requires five essential constituents: (1) a plan, fund or program (2) established or maintained (3) by an employer ... (4) for the purpose of providing medical ... or severance benefits (5) to participants ...") (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1370 (11th Cir.1982)), *cert. denied*, — U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990).

Under Maine law, "[t]he interpretation of an unambiguous written contract is a question of law for the Court.... The interpretation of an unambiguous writing must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence." *Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1387 (Me.1983). Here, the Court finds that Article II of the Agreement, which addresses "Employee Benefit Plans," is unambiguous as a matter of law. The clear and unambiguous language of Article II establishes that, even if the Court were to construe Fleet Bank as having been Plaintiff's employer from February 1 until February 8, 1991, *see* Affidavit in Opposition to Fleet Bank's Motion to Dismiss, Exhibit A (court designated), Fleet Bank did not assume any liability for Plaintiff under the Plan, which, as noted above, is covered within the meaning of "Employee Benefit Plans" of the Agreement.

The Court concludes that the allegations set forth in Count II are directed against MSB and The One Bancorp, and not Fleet Bank. Furthermore, even if such allegations were also directed against Fleet Bank, and the Court were to construe Fleet Bank as Plaintiff's employer as of February 1, 1991, Fleet Bank did not assume any liability for Plaintiff under the Plan. Therefore, as a matter of law, the Court must dismiss Fleet Bank as to Count II.

Accordingly, it is hereby *ORDERED* that Defendant Fleet Bank's Motion for Summary Judgment be, and it is hereby, *GRANTED*.