Joseph PANE, Plaintiff,

v.

RCA CORPORATION, Defendant.

Civ. A. No. 87–1244.

United States District Court,
D. New Jersey.

Aug. 11, 1987.

Charles H. Nugent, Camden, N.J. and Rapp, White, Janssen & German, Ltd. by Henry S. Janssen (argued), Scott M. Morgan, Tanya M. Sweet, Philadelphia, Pa., for plaintiff.

Brown & Connery by John J. Mulderig, Westmont, N.J. and Morgan, Lewis & Bockius by Mark S. Dichter (argued), Kenneth D. Kleinman, Philadelphia, Pa., for defendant.

## OPINION

COHEN, Senior District Judge:

In this action for damages and equitable relief, plaintiff Joseph Pane, Director of Special Programs for defendant RCA Corporation ("RCA"), alleges that RCA violated his rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and under New Jersey tort and contract law. Presently before the Court are motions by defendant (1) to dismiss plaintiff's state law claims, pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that they are preempted by ERISA, (2) to strike plaintiff's claim for punitive and exemplary damages because such damages are not recoverable under ERISA, and (3) to strike plaintiff's jury demand because ERISA claims do not afford a right to trial by jury.

Plaintiff's complaint charges that, on or about December 8, 1985, RCA adopted an employee severance plan, under which its Vice Presidents and General Managers were to receive lump sum termination benefits. Complaint ¶ 4. At the time this plan was adopted, RCA and General Electric Company ("GE") were engaged in merger negotiations. Complaint ¶ 5. Plaintiff maintains that on December 13, 1985, while he was serving as Vice President and General Manager of RCA's Aerospace and Defense Government Volume and Production Division, he was offered a severance agreement pursuant to this plan, which he accepted. He further asserts that he later received oral and written confirmations of this agreement. Complaint ¶¶ 5–11. He charges that defendant withheld from him the benefits of the severance plan and agreement, and that, when he attempted to

exercise his rights thereunder defendant retaliated against him by, *inter alia*, demotions, reductions in compensation and false disparagements of his abilities to others. Complaint ¶¶ 13–15.

Count I of the complaint asserts that the plan adopted on December 8, 1985, is an employee benefit plan within the meaning of ERISA, and that defendant's conduct violated various provisions of ERISA. Count II charges a violation of defendant's agreement to provide plaintiff with a written severance agreement. Count III alleges a violation of the severance agreement itself, and Count IV seeks damages for the intentional infliction of emotional distress.

Defendant, in addition to filing its Answer denying that plaintiff was a participant in the plan in question, also filed the instant motions, which we shall discuss in turn.

## I. *Pre-emption of State Law Claims*

Defendant maintains that Counts II, III, and IV of the complaint, which contain state law claims, are pre-empted by ERISA and should be dismissed. Count II alleges breach of a contract to provide plaintiff with a severance agreement; Count III, a breach of the terms of defendant's severance plan itself; and Count IV, intentional infliction of emotional distress. The only other count is Count I, which seeks relief under ERISA, and which is not the object of defendant's motion to dismiss.

ERISA pre-empts, with certain enumerated exceptions not applicable here,[1] "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA, 29 U.S.C. § 1144(a). There are two steps to our analysis of whether plaintiff's state law claims are pre-empted. First, we must determine if defendant had an ERISA benefit plan as defined by the courts. If defendant did have such an employee benefit plan, then, second, we must analyze whether the state laws involved "relate to" this plan.

## A. *Existence of an ERISA Plan*

The Supreme Court very recently addressed the meaning of "employee benefit plan" in the context of ERISA pre-emption in *Fort Halifax Packing Co., Inc. v. Coyne*, —— U.S. ——, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In *Fort Halifax*, the Court ruled that a Maine statute requiring employers to provide a one-time severance payment to workers in the event of a plant's relocation or closing was *not* pre-empted by ERISA. The Court held that the Maine statute did not establish an employee benefit "plan," and that only state laws relating to such plans were pre-empted by ERISA. The Court stated that a plan entails ongoing administrative systems to meet the employer's obligations, and that the purpose of ERISA pre-emption was to avoid the confusing and conflicting application of different state schemes. "Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation," the Court stated. 107 S.Ct. at 2217. A company's program mandated by the Maine statute, requiring a single "lump-sum payment triggered by a single event requires no administrative scheme whatsoever," *id.* at 2218, and was held not to constitute a plan, and so the statute was not pre-empted by ERISA.

The Court distinguished the Maine statutory program from a situation in which an employer agreed to pay severance benefits to each employee as he or she leaves the company's employ. In the latter case, an ongoing administrative scheme was necessary, since the employer made a separate analysis of each employee's eligibility for benefits and schedule of payments, and thus an ERISA plan was in existence. *Id.* at 2221 n. 10.

Defendant urges that an ERISA plan existed in the case presently before us, since its severance program entailed individual payments to each employee, based on that employee's eligibility. The severance agreement, which is attached as Exhibit A to the complaint, provides that an

---

1. The exceptions permit the ongoing operation of state insurance, banking and securities laws, 29 U.S.C. § 1144(b)(2)(A), and generally applicable criminal laws, 29 U.S.C. § 1144(b)(4).

employee is entitled to these benefits only if a "triggering event" occurs, such as termination of an employee for reasons other than for cause. Thus, the circumstances of each employee's termination must be analyzed in light of these criteria, and an ongoing administrative system constituting an ERISA plan exists.

■ Plaintiff maintains that the severance agreement attached to his complaint does not embody the terms of defendant's severance program, but is merely a contract issued pursuant to the overall program. Plaintiff asserts that defendant is withholding information regarding the terms of the severance program, and that without that information the court cannot evaluate whether an ERISA plan, *see* 29 U.S.C. § 1002(1), as defined in *Fort Halifax*, existed.[2] However, there is no doubt that, whatever the specific provisions of the defendant's severance program, they surely involve a separate determination of each individual's eligibility for benefits. This is *not* a situation, like that in *Fort Halifax*, where the company was obligated to make a single set of payments to all employees, and thus did not need an ongoing administrative system. Defendant did maintain a program to provide employees with "benefits in the event of … unemployment," 29 U.S.C. § 1002(1), and thus had an ERISA plan. Accordingly, we proceed to the second step in our analysis, whether the state laws under which plaintiff seeks recovery "relate to" this plan.

### B. *Relation of State Law Claims to the Plan*

The Supreme Court has held that a state law "relates to" an employee benefit plan if it "has a connection with or reference to such plan," and that the scope of this pre-emption clause is therefore not restricted to state laws dealing specifically with employee benefit plans. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–98, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983).

The ERISA pre-emption clause should be construed broadly, and is designed to "establish pension plan regulation as exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).

In April, 1987, the Supreme Court addressed ERISA pre-emption in *Pilot Life Ins. Co. v. Dedeaux*, —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) and *Metropolitan Life Ins. Co. v. Taylor*, —— U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In *Pilot Life*, the plaintiff alleged that his disability benefits from an employee benefit plan were improperly terminated, and he filed a complaint containing three counts: tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. The Court held that these common law tort and contract claims were pre-empted by ERISA, and did not fall within the exception for laws regulating insurance, as plaintiff had argued. The Court noted that there was no dispute that these state causes of action "relate to" an employee benefit plan and are thus pre-empted; the Court relied on the *Shaw* Court's definition of "relate to" as "having a connection with or reference to" an ERISA plan, 463 U.S. at 97, 103 S.Ct. at 2900, quoted above. The Court recalled the legislative history of the pre-emption clause, and Congress' rejection of a more limited clause in favor of a much broader one. The balance of the discussion in *Pilot Life* then concerned whether these apparently pre-empted claims were "saved" by the exception regarding insurance laws. In *Metropolitan Life*, which also involved an employee whose disability benefits were terminated, the Court held that state common law claims asserting improper termination of benefits could form the basis for removing an action filed in state court to federal court, since these claims were pre-empted by ERISA.

The parties in the instance case vigorously disagree as to whether plaintiff's state law claims are pre-empted. Plaintiff urges

---

**2.** We note some inconsistency between this argument and plaintiff's complaint, which specifically asserts that defendant had an ERISA plan. We attribute this discrepency to the issuance of

the *Fort Halifax* opinion after the complaint was filed, which opinion obviously caused plaintiff to question whether an ERISA plan existed.

that, at this preliminary stage in the proceedings, he can plead alternative grounds of relief, pursuant to Fed.R.Civ.P. 8(e)(2) and 18(a),[3] even if those grounds are mutually exclusive. However, if ERISA operates to pre-empt a plaintiff's state law claims, such pre-emption is mandatory, and other federal courts have dismissed state law claims on motions pursuant to Fed.R.Civ.P. 12(b)(6) on this basis. *See, e.g., Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987); *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659 (4th Cir.1986). Therefore, plaintiff cannot use the rules allowing alternative pleading as a defense to defendant's motion to dismiss. Accordingly, we turn to the specifics of the state law claims to see whether they are pre-empted.

Count II of the complaint charges a violation of an agreement to include plaintiff in the plan. Plaintiff contends that, in this count, he is not seeking an interpretation of the terms of the severance plan as applied to him. Rather, he alleges a breach of a separate contract, in which defendant promised to include him in a severance plan, and he urges that this claim is not pre-empted by ERISA. He further maintains that there is nothing in ERISA or the recent Supreme Court cases interpreting its pre-emption clause that prevents an employee from seeking state law enforcement of a non-ERISA contract.

■ Yet, as defendant notes, the dispute over this alleged non-ERISA agreement is closely tied to the issue of plaintiff's inclusion in the severance plan. In *Ogden v. Michigan Bell Telephone Co.*, 657 F.Supp. 328, 8 Employee Benefits Cas. (BNA) 1478 (E.D.Mich.1987), the court considered plaintiff's state law claims for fraud and misrepresentation in connection with the ERISA plan, and held these claims pre-empted regardless of whether plaintiff was actually covered by the plan. Plaintiff's claim under Count II does "relate to" the ERISA plan, in the "broad common-sense meaning," *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), of that phrase, and is pre-empted by ERISA.

■ Count III of the complaint, asserting a breach of the severance agreement itself, is also pre-empted by ERISA and must be dismissed. In that count plaintiff seeks enforcement of his rights under the severance plan. He can litigate the plan's application to him under Count I, which seeks relief under ERISA. Other courts have held common law breach of contract claims pre-empted by ERISA. *See, e.g., Salomon, supra.* This count does "relate to" the defendant's plan, and accordingly is pre-empted by ERISA.

Defendant further urges that Count IV, charging intentional infliction of emotional distress, is pre-empted by ERISA. Plaintiff contends therein that defendant's refusal to grant him severance benefits and its alleged retaliation against him for seeking to secure these payments caused him severe emotional distress. Defendant maintains that this Count does relate to the administration of the plan, and is pre-empted by ERISA. It calls our attention to several federal courts of appeals decisions holding that claims for intentional infliction of emotional distress are pre-empted by ERISA. *See Howard v. Parisian, Inc., supra; Powell v. Chesapeake & Potomac*

3. **Rule 8. General Rules of Pleading**
   **(e) Pleading to be Concise and Direct; Consistency.**

   \*    \*    \*    \*    \*    \*

   (2) A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

   **Rule 18. Joinder of Claims and Remedies**
   **(a) Joinder of Claims.** A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as he has against an opposing party.

*Telephone Co.*, 780 F.2d 419 (4th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986). The recent *Pilot Life* decision of the Supreme Court, discussed above, is cited by defendant as further support for its position. *Pilot Life* reiterated the Court's pronouncement that ERISA pre-emption is to be applied broadly, to pre-empt any claim that "relates to" a plan.

Plaintiff argues that *Pilot Life* is distinguishable from the present case because it involved a complaint regarding the processing of a disability claim, not a dispute over whether an employee is included in the plan at all. Yet *Pilot Life* is cited by defendant not for its particular holding, but for its emphasis on the scope of ERISA pre-emption and its affirmance of the "relate to" standard for evaluating pre-emption claims. Defendant notes that at least one case subsequent to *Pilot Life* has held that a claim for intentional infliction of emotional distress is pre-empted when that claim relates to an employee benefit plan. *Roberson v. The Equitable Life Assurance Society of the United States,* 661 F.Supp. 416 (C.D. Calif.1987).

■ Plaintiff further asserts that a district court opinion in this circuit that preceded *Pilot Life* and held that a claim for intentional infliction of emotional distress was not pre-empted by ERISA remains good law. In *Kelly v. Int'l Business Machines Corp.,* 573 F.Supp. 366 (E.D.Pa.); *aff'd mem.,* 746 F.2d 1467 (3d Cir.1984), the court held that plaintiff's claim for intentional infliction of emotional distress fell into the category of state law causes of action that "affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Id.* at 371, quoting *Shaw, supra,* 463 U.S. at 100, n. 21, 103 S.Ct. at 2901, n. 21. Although *Kelly* was affirmed by an unpublished memorandum opinion of the Third Circuit Court of Appeals, that type of affirmance does not constitute binding precedent in this circuit. *See Aetna Life & Casualty Co. v. Maravich,* 824 F.2d 266, 269 (3d Cir.1987); *Edge v. Schweiker,* 814 F.2d 125, 127, n. 1 (3d

Cir.1987). *Kelly's* holding on intentional infliction of emotional distress was cited approvingly in *Benvenuto v. Connecticut General Life Ins. Co.,* 643 F.Supp. 87, 92 (D.N.J.1986), but was not relied on for the holding in that case. In light of the recent Supreme Court decisions regarding pre-emption, decided after *Kelly,* we respectfully disagree with the *Kelly* court, and hold that plaintiff's claim for intentional infliction of emotional distress is pre-empted by ERISA.

In reaching this conclusion, we recall the Supreme Court's determination that Congress intended to "establish pension plan regulation as exclusively a federal concern," *Pilot Life,* 107 S.Ct. at 1552, quoting *Alessi, supra.* Count IV of plaintiff's complaint involves relations between two of the principal ERISA entities, the employer and employee, and is not a situation involving some outside parties, where courts are less likely to find that the state law relates to the benefit plan. *See Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1467 (5th Cir.1986) *cert. denied,* —— U.S. ——, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987). Congress could have decided to include in ERISA a provision for damages from intentional infliction of emotional distress, but did not identify that as a separate cause of action in its scheme of pension plan regulation. We agree with defendant that Count IV, like Counts II and III of the complaint, relates to the plan in question, and so all three of plaintiff's state law claims are pre-empted by ERISA and will be dismissed. The only remaining Count is Count I, seeking recovery under ERISA.

## II. *Punitive and Exemplary Damages*

Defendant moves that plaintiff's claim for punitive and exemplary damages should be stricken, since such damages are not available under ERISA. Defendant cites various cases holding that extracontractual damages are not available under ERISA. While none of these cases are from the Third Circuit Court of Appeals, one of them, *Covington v. Int'l Rehabilitation Associates, Inc.,* C.A. No. 86–3503 (E.D.Pa. October 16, 1986) [Available on

WESTLAW, DCT database], interpreted available Third Circuit precedent and concluded that punitive damages are unavailable under ERISA. That court focused on Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), providing for the enforcement through equitable measures of Section 510, 29 U.S.C. § 1140, which proscribes retaliatory conduct against employees seeking to enforce their rights under an ERISA plan. Plaintiff in the instant case alleges that defendant engaged in such retaliatory conduct. *Covington* noted that most Courts of Appeals had ruled that punitive damages were not recoverable under this provision, *see, e.g. Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1216 (8th Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). *Covington* analogized the Third Circuit's approach to punitive damages in reference to the Equal Employment Opportunity Act, 42 U.S.C. § 2000e *et seq.*, to the ERISA situation. In *Richerson v. Jones*, 551 F.2d 918 (3d Cir.1977), the court held that punitive damages were unavailable under 42 U.S.C. § 2000e–5(g), which provides for equitable relief to redress unlawful employment practices. The Third Circuit reasoned that "equitable relief" does not normally include punitive damages, and there was no expression of Congressional intent to the contrary. *Covington* applied this rationale to ERISA Section 502(a)(3), which provides for "equitable relief," and concluded that punitive damages are not recoverable thereunder.

■ Plaintiff cites only one case holding that punitive damages are available under ERISA, *Smith v. ABS Industries, Inc.*, 653 F.Supp. 94 (N.D.Ohio 1986), but the Judge in that case later repudiated his holding in *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. Park-Ohio Industries, Inc.*, 661 F.Supp. 1281 (N.D.Ohio 1987). Plaintiff asserts, however, that under the Federal Rules of Civil Procedure, especially Rule 8(a), he is entitled to plead alternative grounds for relief, and that Rule 12, which governs this motion to dismiss, does not allow a court to restrict *relief* sought. Yet defendant points out that other federal courts have stricken the punitive damage claims at this stage of the proceedings. *See Bigger v. American Commercial Lines, Inc.*, 652 F.Supp. 123, 128 (W.D.Mo.1986); *Covington, supra.* Therefore, we strike plaintiff's claim for punitive and exemplary damages.

## III. *Jury Demand*

The final issue presently before the Court is defendant's motion to strike plaintiff's demand for trial by jury. Since we hold that all of plaintiff's state law claims are pre-empted, the only issue before us is whether plaintiff is entitled to a jury trial on this ERISA claim.

ERISA itself is silent as to a plaintiff's right to a jury trial. The civil enforcement section of ERISA, 29 U.S.C. § 1132, provides for several bases on which a participant or beneficiary of a plan may seek relief. 29 U.S.C. § 1132(a)(1)(B) authorizes an action by a plaintiff to recover benefits under the plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the plan. 29 U.S.C. § 1132(a)(3) provides for an action to enjoin any violation of the statute or the plan, or to obtain "other appropriate equitable relief." A review of Count I of plaintiff's complaint reveals that he seeks recovery under *both* of these sections. Plaintiff requests various injunctive and declaratory relief, as well as damages.

■ We hold that plaintiff is not entitled to a jury trial under either section. The Third Circuit has stated that 29 U.S.C. § 1132(a)(3) does not afford the right to a jury trial, since it provides for "equitable relief," which relief is granted by a court, not a jury. *Turner v. CF & I Steel Corp.*, 770 F.2d 43, 46 (3d Cir.1985) *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). The Third Circuit in *Turner* also held that, while 29 U.S.C. § 1132(a)(1)(B) does not explicitly provide for equitable remedies, most actions instituted pursuant to that subsection are more appropriately decided by a court than a jury, since they involve a determination of whether the trustees or administrators of the plan abused their discretion in denying benefits

to a claimant. *Id.* The *Turner* court characterized the action therein for benefits under an ERISA plan as equitable, and thus not triable by a jury.

Plaintiff cites the statement in *Turner* that "most cases brought under subsection (a)(1)(B) do not involve disputed factual matters," *id.* at 46, for the proposition that *Turner's* holding does not apply to this case, since this case does involve a factual dispute. We do not read *Turner* so narrowly. The central issue in the present case, as in *Turner* and most ERISA cases, is whether the plaintiff is entitled to benefits. These cases involve the court's review of the trustees' evaluation of the application for benefits. The only additional issue in the instant case regarding plaintiff's entitlement to benefits, is whether plaintiff was a participant in the plan at all, yet the decision to exclude plaintiff from participation may also have been made by the plan's administrators. Courts have determined that Congress intended "that suits for pension benefits by disappointed applicants are equitable," *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820, 829 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), cited in *Turner, id.* at 46. An Eleventh Circuit court recently determined that most circuits which have addressed the issue have concluded that these actions pursuant to 29 U.S.C. § 1132(a)(1)(B) do not afford a right to trial by jury. *Howard v. Parisian, supra* at 1567. In light of *Turner* and the strong authority in other circuits, we conclude that plaintiff's claims under 29 U.S.C. § 1132(a)(1)(B) and (a)(3) are not triable by a jury, and defendant's motion to strike the jury demand will be granted.

Accordingly, we grant defendant's motions to dismiss the state law claims, to strike the claim for punitive and exemplary damages, and to strike the jury demand. An appropriate order will be entered.