Anne B. WAY, Plaintiff,

v.

OHIO CASUALTY INSURANCE COMPANY, ABC Corporations 1–10 (fictitious names), Defendants.

Civil Action No. 04–4418 (JBS).

United States District Court, D. New Jersey.

Dec. 2, 2004.

Alexander W. Ross, Jr., Esq., Janice Heinold, Esq., Rakoski & Ross, P.C., Marlton, NJ, for Plaintiff.

Edward T. Ellis, Esq., Jennifer T. Keegan, Esq., Montgomery, McCracken, Walker & Rhoads, Llp, Cherry Hill, NJ, for Defendants.

## *OPINION*

SIMANDLE, District Judge.

This matter comes before the Court upon Defendant Ohio Casualty Insurance Company's motion for judgment on the pleadings as well as Plaintiff Anne Way's alternative motion for leave to file an amended complaint and motion to remand. The key issue presented, and that upon which all three motions turn, is whether Defendant's Separation Pay Plan qualifies as an employee benefits plan under the Employment Retirement Income Security

Act ("ERISA"). Because this Court determines that ERISA covers the plan at issue and for the reasons discussed herein, Defendant's motion for judgment on the pleadings will be granted in part, Plaintiff's related claims arising under state law are preempted and dismissed, Plaintiff's motion for leave to file an amended complaint will be granted and Plaintiff's motion to remand will be denied.

## I. *BACKGROUND*

Plaintiff Anne B. Way filed a Complaint in the Superior Court of New Jersey, Law Division, on July 29, 2004. On September 13, 2004, Defendant filed a notice of removal with the Camden County Superior Court. Plaintiff claims that Defendant Ohio Casualty Insurance Company ("Ohio Casualty") wrongfully refused to pay her severance pay benefits in accordance with Ohio Casualty's Separation Pay Plan after her employment ended with the company on February 11, 2004. Plaintiff's Complaint alleges three claims against Ohio Casualty arising from the denial of separation pay. Count I is a claim for breach of contract, Claim II alleges a claim for fraud and/or misrepresentation, and Claim III alleges a claim for the tort of outrage.

Plaintiff was employed as an adjuster by Ohio Casualty in its Voorhees, New Jersey office until her employment ended on February 11, 2004 as part of the continued implementation of a sale and transfer of a business division to Proformance Insurance Company ("Proformance"). (Compl.¶¶ 2–3.) Ohio Casualty administers what it considers to be an ERISA benefits plan, entitled "Separation Pay Plan," which provides employees nationwide, including Plaintiff, an opportunity to receive certain severance pay where eligible in accordance with its terms. The plan under which Plaintiff would be covered is that which bears an effective date of April 6, 2000. The plan is administered by Defendant's Welfare Plan Committee. The Separation Pay Plan provides, *inter alia,* that an employee laid off because of a sale is eligible for separation pay unless the employee is offered employment with the purchaser within fifty (50) miles of the employee's last worksite in a job paying eighty-five percent (85%) or more of the employee's present rate of pay. (*Id.* at ¶ 4.) This is the provision implicated in Plaintiff's case.[1]

At the end of her employment with Ohio Casualty, Plaintiff did not receive severance benefits under the Plan. (*Id.* at ¶ 6.) Defendant's Welfare Plan Committee determined that the Plan was not obligated to provide Plaintiff with severance benefits as Plaintiff was offered employment by Proformance within fifty (50) miles of her last worksite in a job paying at least eighty-five percent (85%) of her last rate of pay at Ohio Casualty. Plaintiff argues that these conditions were not met and that she was therefore eligible for severance pay in the amount of $14,473.05, together with accumulated unused vacation pay. This Court heard oral argument on these motions on November 22, 2004.

## II. *DISCUSSION*

### A. *Defendant's Motion for Judgment on the Pleadings*

#### 1. *Is this an ERISA Benefits Plan?*

Defendant moves, pursuant to Fed. R.Civ.P. 12(c), for judgment on the pleadings, arguing that Plaintiff's claims are

---

1. The severance pay benefit is equal to one week's base pay for each year of service as of the date of the permanent layoff, with a minimum benefit equal to four weeks' base pay.

(Separation Pay Plan, Answer, Ex. A, p. 2.) Payments under the Plan are made in two-week increments on regularly scheduled paydays. (*Id.* at p. 3.)

preempted by the Employee Retirement Income Security Act ("ERISA"). Federal Rule of Civil Procedure 12(c) states, in relevant part, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings...." Fed.R.Civ.P. 12(c). Here, the Separation Pay Plan was attached to the Answer and thus constitutes part of the pleadings to be construed in this Rule 12(c) motion. Defendant argues that Plaintiff's state law claims are preempted by ERISA, that Plaintiff can thus prove no set of facts in support of those claims that would entitle her to relief, and that judgment on the pleadings is appropriate.

■ Section 514 of ERISA, 29 U.S.C. §§ 1132, *et seq.*, provides for broad preemption of state laws serving as the basis of claims relating to employee benefit plans governed by ERISA:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a). In the Third Circuit, courts are to conduct a two-part analysis for determining whether state law claims are indeed preempted by ERISA. First, a court must determine whether the plan at issue qualifies as an ERISA benefits plan. Second, a court must determine whether the applicable state laws "relate to" that plan. *Alston v. Atlantic Elec. Co.*, 962 F.Supp. 616, 622 (D.N.J.1997).

Thus, this Court first considers whether Ohio Casualty's Separation Pay Plan constitutes an ERISA plan. ERISA defines an employee welfare benefit plan, in pertinent part, as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries ... (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....

29 U.S.C. § 1002(1). Although severance benefits are not specifically mentioned in § 1002(1), courts have determined that most, but not all, severance packages qualify as ERISA plans. *See, e.g., Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 75 (2d Cir.1996). In *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), however, the Supreme Court held that severance benefits do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme. *Id.* at 11–12, 107 S.Ct. 2211. *See also Pane v. RCA Corp.*, 667 F.Supp. 168, 170 (D.N.J.1987), *aff'd*, 868 F.2d 631 (3d Cir.1989).

Defendant argues that its Separation Pay Plan was established or is maintained for the purpose of providing for its participants benefits in the event of "unemployment" and thus those benefits are of the kind described in 29 U.S.C. § 1002(1). *See Alston*, 962 F.Supp. at 623; *Pane*, 868 F.2d at 635; *LaFata v. Raytheon Co.*, 223 F.Supp.2d 668, 676 (E.D.Pa.2002). In addition, Defendant contends that Ohio Casualty's plan creates an ongoing administrative scheme because it is national in scope, applies to various types of separation from employment, is administered by the Welfare Plan Committee, and requires analy-

sis and investigation when determining eligibility for and amount of benefits, thereby implementing a set of administrative practices.

Plaintiff, in contrast, contends that Defendant's severance plan is not governed by ERISA because payment to an employee turns on simple calculations based on objective criteria—*i.e.* whether the employee was offered a job with the purchaser within 50 miles of the last worksite and at an amount that is at least 85% of her previous pay, thereby resulting in an amount of severance pay calculated as simply one week's pay for each year of completed employment—rather than on a case-by-case analysis of subjective criteria.

While it is plain that ERISA subject matter jurisdiction depends upon the need for an administrative program, the test for deciding which employer obligations and undertakings classify as such a program is not nearly as clear. In *Pane v. RCA, Corp.*, 868 F.2d 631 (3d Cir.1989), the Third Circuit affirmed the district court's determination that various severance agreements created by RCA to retain a small group of executives during a merger with General Electric Company constituted an ERISA plan. The determining factor was that under each agreement, the employee was entitled to benefits only if he or she was terminated for reasons other than cause. Therefore, "the circumstances of each employee's termination [had to] be analyzed in light of [certain] criteria, and an ongoing administrative system constituting an ERISA plan exist[ed]." *Id.* at 171.

In *Alston v. Atlantic Electric Co.*, 962 F.Supp. 616 (D.N.J.1997), the district court held that where a severance plan provided for six months of continued health benefits and for outplacement training, and thus required an ongoing management scheme for their administration, the severance plan constituted an ERISA plan. *Id.* at 623. However, the court stated in *dictum* that where a plan involves "a one-time severance payment that required only simple arithmetic calculations and that would fall short of requiring an ongoing administrative scheme for its implementation," it would not qualify as an ERISA plan. *Id.* at 623.

In addition, the Third Circuit, in *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir.1992), determined that ERISA did not preempt the plaintiff's claims for breach of a buyout plan where the employer agreed, after negotiation with the employees' union, to provide departing employees with a lump-sum cash payment and a year of continued benefits. The court determined that this was a single-circumstance plan addressing a single event, and that no discretionary analysis was required with the plan at issue and the simple disbursement of a set amount of money to each employee applicant would require no ongoing administrative scheme. *Id.* at 1538. Moreover, the court held that "ERISA does not apply to buyout plans ... which provide for the continuation of benefits to which the departing employees had already been entitled under an existing plan." *Id.* at 1540. *Angst* is distinguishable from the present Plan, which is nationwide and continuous in scope, applies to a variety of separations, and is administered by a board with ongoing functions.

By contrast, in *James v. Fleet/Norstar Financial Group, Inc.*, 992 F.2d 463 (2d Cir.1993), the Second Circuit held that the employer's oral undertaking to give employees sixty days of pay following the last day of work if employees would remain on the job until internal consolidation was completed did not create an employee welfare benefit plan within the meaning of ERISA. Despite the fact that Fleet's employees had different termination dates,

different eligibility, and that payments had to be calculated individually, the court found that such measures did not require the establishment of an ongoing administrative scheme. *Id.* at 467. The court held instead that the simple arithmetical calculations and clerical determinations that Fleet was required to make on this one occasion to ascertain each employee's severance pay was a far cry from the ongoing and discretionary administrative analysis required of plans governed by ERISA. *Id.* at 468. Moreover, "the employee's option to receive the money in biweekly installments instead of in a lump sum did not change the basic situation." *Id.* at 466.

Finally, in *Schonholz v. Long Island Jewish Medical Center*, 87 F.3d 72 (2d Cir.1996), the severance plan at issue provided for payments to senior-level employees upon their involuntary discharge. Such payments were based upon both the length of time the employee held his position and his prospects for reemployment, but would only be made if the employee displayed a reasonable and good faith effort to obtain a position commensurate with his former level of responsibility. *Id.* at 74. In holding that the plan at issue did indeed implicate ERISA, the Second Circuit focused on the fact that the plan required much more than simple arithmetical calculations, requiring instead evaluation of a number of subjective factors. "The Severance Plan necessitated both managerial discretion and a separate analysis of each employee in light of certain criteria." *Id.* at 76. In addition, the court determined that the plan's "effective period was unlimited and would have reasonably been perceived by an employee as an ongoing commitment." *Id.* at 76–77.

■ In light of this case law and analyzing the evidence of record from the viewpoint of a reasonable person, this Court finds that Ohio Casualty's Severance Pay Plan is an employee welfare benefit plan covered by ERISA. The Pay Plan clearly indicates an intent to "pay benefits, depending on the type of termination, to employees whose employment is terminated by the Company." (Separation Pay Plan, Answer, Ex. A, p. 1.) This undertaking is regular and ongoing, rather than the result of a one-time event or occurrence like those in *James* or *Angst*. The explicit language of the Pay Plan sets forth various categories of termination, applicable separation payment amounts, eligibility requirements, and intended beneficiaries. (*Id.* at 2–4.) In addition, the plan provides a claims procedure and means for internal review of benefits related decisions:

> The Welfare Plan Committee members shall serve as administrators of this Separation Pay Plan, and shall have full authority to interpret the provisions and terms of this policy, including authority to determine the eligibility for separation pay and the amount of separation pay payable under the Plan, and to take such other action as the Committee deems equitable under the circumstance in light of the purpose of this policy. The interpretations and determination of the administration shall be conclusive unless they are arbitrary and capricious or an abuse of discretion.

(*Id.*) Thus, the plan at issue requires an evaluation of a number of factors and decisions in rendering an ultimate determination. *Compare Fontenot v. NL Industries, Inc.*, 953 F.2d 960, 963 (5th Cir.1992)("NL Industries' severance plan requires no administrative scheme because those employees included in the plan were to receive benefits upon termination regardless of the reason for termination.")

■ Plaintiff claims, however, that nothing more is required than simple calculations based on objective criteria, thereby

removing it from the realm of ERISA coverage, much like the severance payment in *James* and as suggested by the court's *dictum* in *Alston*. In support of that argument, Plaintiff points to the plan's language pertaining to disqualification:

An employee who might otherwise qualify for a separation pay benefit under this Plan shall be disqualified for such benefit by the following events or circumstances.

B. If an employee's Permanent Layoff is due to the Company's sale of all or a portion of its assets to another person or entity, the employee will not be eligible for separation pay benefits. This assumes the employee had the opportunity to accept employment with the purchaser at a location within fifty (50) miles of the employee's last worksite with the Company in a job paying no less than eighty-five percent (85%) of the employee's base rate of pay at the time of purchase, regardless of whether or not the employee chooses to accept such employment.

(Separation Pay Plan, Answer, Ex. A, p. 4.) While disqualification may indeed involve a mere arithmetic calculation, other components of the plan do not. Moreover, what is a simple arithmetic calculation in Plaintiff's case, may very well require a more involved evaluation of various criteria in that of another covered employee. Thus, much like in *Pane*, the instant plan requires the evaluation of the circumstances surrounding each claimant's reason for termination and individual case. In evaluating whether a severance benefits plan qualifies as an ERISA covered plan, a court must look to the plan as a whole, not just how a plaintiff's specific circumstances play out under that plan. *See generally, Colarusso v. Transcapital Fiscal Systems, Inc.,* 227 F.Supp.2d 243, 253 (D.N.J.2002).

Ohio Casualty's severance plan clearly evinces an intent to provide such benefits to its employees as eligibility criteria are triggered for individual employees on an on-going basis, and not as a result of a one-time precipitating event. "The Third Circuit has held that the crucial factor in determining whether a plan has been established is 'whether the employer has expressed an intention to provide benefits on a regular and long-term basis.'" *La Fata,* 223 F.Supp.2d at 675 (citing *Deibler v. United Food and Commercial Workers' Local Union 23,* 973 F.2d 206, 209 (3d Cir.1992)). Here, that hallmark has been met. Ohio Casualty has assumed the responsibility of paying benefits on a regular basis, and thus faces periodic demands on its assets that create a need for financial coordination and control. *See Fort Halifax Packing Co., Inc.,* 482 U.S. at 12, 107 S.Ct. 2211. While it is true that the severance payment here is not the kind of on-going benefit that triggered the applicability of ERISA in *Alston* or *Schonholz,* Ohio Casualty's commitment to providing this unemployment benefit to its employees is a regular one and necessitates an administrative scheme for its implementation. Nothing in the language of the plan suggests an abdication of this responsibility based on the occurrence of a single contingency, such as in Plaintiff's case, the sale and transfer of a business division to Proformance. Because this Court finds that from the surrounding circumstances a reasonable person can ascertain the program's intended benefits, a class of beneficiaries and procedures for receiving benefits, and nationwide applicability to a host of separation contingencies on an ongoing basis, it holds Ohio Casualty's severance plan to be covered by ERISA. *See Deibler v. United Food and Commercial Workers' Local Union 23,* 973 F.2d 206, 209 (3d Cir.1992)(setting forth these hall-

mark factors that give rise to ERISA benefit plans).

### 2. Do Plaintiff's State Law Claims "Relate to" this ERISA Plan?

Having determined that Ohio Casualty's plan is covered by ERISA, this Court next turns to the second question of the inquiry. Defendant argues that ERISA preempts Plaintiff's state claims because all of those claims "relate to" an ERISA plan. The United States Supreme Court has held that the "relate to" standard should be broadly applied. See, e.g., Ingersoll–Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)(concluding that Congress had "expressly included a broadly worded preemption provision in a comprehensive statute such as ERISA," based on Congress's use of "the words 'relate to.' Congress used those words in their broad sense, rejecting more limited preemption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.'")(internal citations omitted). The Supreme Court has generally held that state laws "relate to" an ERISA plan if the law either has a "reference to" or has a "connection with" the plan at issue. See, e.g., Ingersoll–Rand Co., 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474; Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); see also Kelly v. International Business Machs. Corp., 573 F.Supp. 366 (E.D.Pa.1983), aff'd, 746 F.2d 1467 (3d Cir. 1984).

In Pane v. RCA Corp., the Third Circuit affirmed the district court's grant of the employer's motion to dismiss state law claims. There, the plaintiff filed a complaint based on wrongful withholding of severance benefits and alleged claims for breach of contract, breach of covenants of good faith and fair dealing, and intentional infliction of emotional distress. 868 F.2d at 634. The Third Circuit held that all of the state claims—including breach of contract and intentional infliction of emotional distress [2]—related to an ERISA plan and were therefore preempted. See also Metz v. United Counties Bancorp, 61 F.Supp.2d 364 (D.N.J.1999); Alston, 962 F.Supp. at 623–24. Defendant thus argues that Plaintiff's claims for breach of contract, fraud and/or misrepresentation, and outrage are clearly related to Ohio Casualty's Separation Pay Plan, an ERISA benefits plan, and should similarly be deemed preempted by ERISA.

■ Finally, Defendant asserts that Plaintiff cannot prevail on her fraud and outrage claims because she has not alleged facts that, if true, would give rise to the claims asserted as a matter of law. Plaintiff's allegation that she did not receive separation pay benefits do not support the elements of a fraud or outrage claim. Moreover, tort claims do not arise out of circumstances where the parties' rights are governed by a document that creates contractual rights and responsibilities. See, e.g., Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F.Supp.2d 557, 562–64 (D.N.J.2002)(citing Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 144 (3d Cir.2001) and Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 618 (3d Cir.1995)). As discussed below in the following section, Plaintiff has sought to address these defects by amending her Complaint.

### B. Plaintiff's Motion for Leave to File Amended Complaint

In the event that the Court finds the severance plan at issue in this case to be

---

**2.** "State law claims of emotional distress arising out of the administration of an ERISA employee benefit plan are also preempted." Id. at 635 (internal citations omitted).

governed by ERISA, Plaintiff requests that this Court grant leave to file an amended complaint. Since this Court has found the Separation Pay Plan to be governed by ERISA, it must now determine whether amendment would be proper. Amendments to pleadings are "freely given when justice so requires" under Federal Rule of Civil Procedure 15(a). Claims should be decided on the merits rather than on technicalities. *Dole v. Arco Chemical Co.*, 921 F.2d 484, 487 (3d Cir.1990). Amendments should be granted except in certain limited circumstances, such as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ Plaintiff's proposed Amended Complaint states one single cause of action, a violation of ERISA, in which Plaintiff alleges an unlawful denial of benefits. Such amendment serves the purpose of curing any deficiencies that the original Complaint may have contained and would not be futile, despite Defendant's contentions to the contrary, as the facts pertaining to Plaintiff's disqualification from eligibility for severance benefits are in dispute. Thus, this Court will permit Plaintiff to file her Amended Complaint at this time.

### C. *Plaintiff's Motion to Remand*

■ This action was originally brought in the Superior Court of New Jersey, Law Division, Camden County. Defendant's Notice of Removal alleges that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff now moves to remand this matter to that same court from which it was removed pursuant to 28 U.S.C. § 1447(c).

■ Where diversity of citizenship is the basis of federal jurisdiction, the defendant, in removing the action, must establish that the amount in controversy exceeds $75,000. *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 222 (3d Cir.1999). It is now clear to all involved that Plaintiff's case does not involve a disputed amount in excess of $75,000, as required for purposes of diversity jurisdiction. Nevertheless, having found Ohio Casualty's Separation Pay Plan to be governed by ERISA, a federal question is presented and this Court thus has federal question jurisdiction under 28 U.S.C. § 1331. Remand to state court is therefore inappropriate and Plaintiff's motion seeking such must be denied.[3]

### III. CONCLUSION

For the reasons discussed above, this Court finds that Ohio Casualty's Separation Pay Plan constitutes an employee benefits plan governed by ERISA. Thus, Defendant's motion for judgment on the pleadings will be granted in part. Plaintiff's alternative motion for leave to file an Amended Complaint will be granted. Finally, Plaintiff's motion to remand will be denied. The accompanying Order will be entered.

### ORDER

This matter having come before the Court on Defendant Ohio Casualty Insurance Company's motion for judgment on the pleadings, Plaintiff Anne B. Way's motion for leave to file an amended complaint, as well as Plaintiff's motion to remand; and the Court having considered the sub-

---

**3.** Given this disposition, Plaintiff's application for costs and attorneys' fees for obtaining remand pursuant to 28 U.S.C. § 1447(c) is moot.

missions of the parties in support of and in opposition thereto; and the Court having heard oral argument on November 22, 2004; and for the reasons expressed in the Opinion of today's date; and for good cause shown;

IT IS this **2nd day of December, 2004** hereby

ORDERED that Defendant Ohio Casualty Insurance Company's motion for judgment on the pleadings [Docket Item No. 10–1] shall be, and hereby is, ***GRANTED IN PART***; and

IT IS FURTHER ORDERED that Defendant Ohio Casualty Insurance Company's Separation Pay Plan is an employee benefits plan governed by ERISA; and

IT IS FURTHER ORDERED that Plaintiff's claims arising at state law are preempted and are hereby ***DISMISSED***; and

IT IS FURTHER ORDERED that Plaintiff Anne B. Way's alternative motion for leave to file an amended complaint [Docket Item No. 15–1] shall be, and hereby is, ***GRANTED***, and Plaintiff's counsel should file and serve the Amended Complaint within 14 days; and

IT IS FURTHER ORDERED that Plaintiff Anne B. Way's motion to remand to New Jersey Superior Court [Docket Item No. 12–1] shall be, and hereby is, ***DENIED***.